IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| United States of America,<br><br>                                        Plaintiff,<br><br>vs.<br><br>Kaycee Remone Heard<br><br>                                        Defendants. | Case No. 1:20-cr-00068 |

# SENTENCING MEMORANDUM

## BACKGROUND

[¶1]   On September 2, 2021, Defendant Kaycee Heard was charged in a Second Superseding Indictment with: Count One Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances and Count Three Possession with Intent to Distribute Controlled Substances (Oxycodone and 40 grams or more – Fentanyl). Doc. No. 749.

[¶2]   On September 20, 2022, the Defendant appeared at a change of plea hearing in Bismarck, North Dakota. Doc. No. 1303. Pursuant to a plea agreement, the Defendant pled guilty to Count One of the Second Superseding Indictment. Doc. No. 1248. The offense conduct outlined in the plea agreement provided:

>   **Count One:**
>   Beginning in or about 2016 and continuing until in or about 2020, in the District of North Dakota the Defendant Kaycee Remone Heard, a/k/a Kaycee Ballhard, a/k/a Juan, knowingly and intentionally combined, conspired, confederated, or agreed with others to distribute and possess with intent to distribute (i) opiate pills that were a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance; (ii) opiate pills that were a mixture and substance containing a detectable amount of fentanyl (a/k/a "N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide"), a Schedule II controlled substance;

and (iii) a mixture and substance containing a detectable amount of heron a Schedule I controlled substance.

In furtherance of this conspiracy, or to effect or accomplish the objects of it, the Defendant Kaycee Remone Heard, a/k/a Kaycee Ballhard, a/k/a Juan, committed the following overt acts:

A. Kaycee Remone Heard transported, or directed the transport of opiate drugs, namely pills containing oxycodone and./or fentanyl, and heroin, from the State of Michigan to the State of North Dakota for purposes of distributing those opiate pills and heroin;

B. Kaycee Remone Heard utilized multiple residences in Bismarck, ND, and on the Fort Berthold Indian Reservation, from which to store, conceal and distribute opiate pills containing oxycodone and/or fentanyl, and heroin;

C. Kaycee Remone Heard used local North Dakota residents to assist him in distributing opiate pills containing oxycodone and fentanyl, and heroin, by having local residents locate customers, transport and deliver opiate pills and heroin, and collect and transport cash;

D. Kaycee Remone Heard set prices for opiate pills and heroin, and directed others to wire money to other persons on his behalf; and,

E. In or about May 2020, Kaycee Remone Heard possessed approximately 926 pills that were a mixture and substance containing fentanyl (approx. 97.5 grams) and oxycodone (approx. 1.90 grams) at an apartment on 2nd Street in Bismarck, North Dakota

[¶3] The Court accepted the plea and ordered that a Presentence Investigation Report (PSR) be prepared. The PSR was filed with the Court on February 7, 2023. Doc. No. 1488. On February 10, 2023, an evidentiary hearing was held to address the Defendant's objections to the PSR. Doc. No. 1495. On February 17, 2023, the Defendant filed his Objection to Presentence Investigation Report. Doc. No. 1498. The Defendant objects to the enhancement under USSG § 3B1.1(b), imposing a 3-offense level increase for a manager or supervisor role and to the increase of his criminal history score pursuant to USSG §4A1.2(f). The United States filed its Sentencing Memorandum and Supplement on March 2, 2023. Doc. Nos. 1522-1523.

## DISCUSSION

### A. Adjustment for Role in the Offense

[¶4]    It is well-established that the Government has the burden of proving by a preponderance of the evidence that the aggravating role enhancement is warranted. United States v. Garcia-Hernandez, 530 F.3d 657, 665 (8th Cir. 2008); United States v. Mesner, 377 F.3d 849, 851–52 (8th Cir. 2004). U.S.S.G. § 3B1.1 provides as follows:

> Based on the defendant's role in the offense, increase the offense level as follows:
>
> (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
> (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
> (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

U.S.S.G. § 3B1.1 (emphasis in original). The commentary and application notes to Section 3B1.1 further provide that:

> 1. A "participant" is a person who is criminally responsible for the commission of the offense, but need not have been convicted. A person who is not criminally responsible for the commission of the offense (e.g., an undercover law enforcement officer) is not a participant.
> 2. To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.
> 3. In assessing whether an organization is "otherwise extensive," all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive.

[¶5]    "The key factors in determining management or supervisory authority are control over participants and organization of the criminal activity." United States v. Valencia, 829 F.3d 1007, 1012 (8th Cir. 2016). "[M]erely distributing or selling drugs is not sufficient for [the] . . .

enhancement." United States v. Lopez, 431 F.3d 313, 318 (8th Cir.2005). However, "it is only necessary that the defendant supervise or manage one other participant." United States v. Johnson, 619 F.3d 910, 921 (8th Cir. 2010). "In addition, the manager or supervisor enhancement 'may apply even if the management activity was limited to a single transaction.'" Lopez, 431 F.3d at 318. The term "'supervisor' [is] to be construed broadly." United States v. Richart, 662 F.3d 1037, 1045-46 (8th Cir. 2011).

[¶6] The PSR recommended that Kaycee Heard be considered a manager and supervisor and the criminal activity involved five or more participants, or "was otherwise extensive." As a result, the offense level was increased by three levels in the PSR. Doc. No. 1488, p. 11. The Defendant objects to the adjustment for a role enhancement.

[¶7] The Court has reviewed the Sentencing Guidelines and particularly U.S.S.G. § 3B1.1, and the commentary and application notes to that guideline provision. The Court has also considered all of the factors recommended in Section 3B1.1 which include the exercise of decision-making authority, the nature of the participation in the commission of the offense, recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and the authority exercised over others.

[¶8] The Court finds by a preponderance of the evidence that the role enhancement of a three-level increase for the Defendant's role as a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive is warranted. To be subject to a role enhancement under U.S.S.G. § 3B1.1(b), a defendant need only manage or supervise one other participant. Johnson, 619 F.3d at 921. It is clear from the record that the Defendant managed or supervised at least one other participant in the drug conspiracy.

[¶9] Bismarck Police Department Detective testified at the hearing that the Defendant recruited, co-defendant Trey Sartwell to assist him in the distribution of opiate pills and place him in contact with others to sell drugs for him. The Detective further testified the Defendant directed, co-defendant Elijah Jackson to transport co-Defendant Dreshon Marshall to Bismarck to acquire more opiate pills to bring back to the Fort Berthold Reservation. Jackson transported Marshall to an apartment in Bismarck rented by co-defendants Sage Thompson and Spirit Whiteshield. The government produced evidence that the Defendant was aware of a stash of additional drugs in the apartment of co-defendant Whiteshield and had, in the context of a jail phone call, coordinated with that person to the gather the supply of drugs. The Detective testified that officers were able to locate the supply of drugs based upon the Defendant's jail phone call. Further, Spirit Whiteshield testified that the Defendant offered her to sell pills for him in exchange for her to allow him to stay at her apartment. Whiteshield testified that the Defendant was her supplier of pills, the Defendant set the price at $40, and had an expectation that the street value was more. Whiteshield testified the Defendant was the only one that had ever sold the pills to her for a lower amount. The Defendant was giving Whiteshield a discount below the market price in order to stay and sell opiate pills from her apartment. The Defendant was clearly supervising Whiteshield by providing her the drugs and would coordinate the sale and indicate when he had more drugs for her to sell. The Defendant clearly recruited Sartwell based on testimony provided by the Bismarck Detective and directed Jackson to transport Marshall to Bismarck to acquire more pills.

[¶10] The Court is convinced, and the facts clearly establish by a preponderance of the evidence, that a three-level increase for an aggravating role adjustment is appropriate, warranted, and reasonable under the circumstances pursuant to U.S.S.G. § 3B1.1(b). The Court finds that the Defendant managed or supervised at least one other "participant" in criminal activity.

### B. Criminal History

[¶11]   The Defendant also objects to paragraph 42 of the PSR assessing a one-point increase in his criminal history score pursuant to USSG §4A1.2(f). The Defendant argues the Holmes Youthful Act (HYTA), Mich. Comp. Laws § 762.11, is a deferred prosecution and should not be counted. The United States argues the one criminal history point is proper because the Defendant entered a guilty plea under HYTA, therefore such plea is a diversionary disposition and not a deferred prosecution.

[¶12]   Under paragraph 42 of the PSR, the Defendant has a conviction from 2016 for Cts.1-3: Deliver/Manufacture Controlled Substances, Ct.4: Operating While License Suspended, Ct.5: Possession of Controlled Substance, Ct.6: Deliver/Manufacture Controlled Substance, in the 3rd Circuit Court, Detroit, Michigan. The Defendant received 2 years probation under the Holmes Youthful Trainee Act and 120 hours community service.

[¶13]   Guideline § 4A1.1(c) requires a Court to add one point for each "prior sentence" not otherwise counted in subsections (a) or (b) of that Guideline. A "prior sentence" means "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense." USSG § 4A1.2(a)(1).  Pursuant to USSG § 4A1.2(f), a "[d]iversion from the judicial process without a finding of guilt (e.g., deferred prosecution) is not counted. A diversionary disposition resulting from a finding or admission of guilt, or a plea of nolo contendere, in a judicial proceeding **is counted as a sentence under § 4A1.1(c) even if a conviction is not formally entered**, except that diversion from juvenile court is not counted." USSG § 4A1.2(f) (emphasis added). The Guideline Commentary provides that "Section 4A1.2(f) requires counting prior adult diversionary dispositions if they involved a judicial determination of guilt or an admission of guilt in open court. This reflects a policy that defendants

6

who receive the benefit of a rehabilitative sentence and continue to commit crimes should not be treated with further leniency." USSG § 4A1.2, note 9.

[¶14]   Under the HYTA, certain defendants in Michigan are eligible to plead guilty and have their convictions dismissed if they complete the youthful trainee program. See Mich. Comp. Laws §§ 762.11 & .14. A guilty plea is a precondition of eligibility for the Michigan youthful trainee program. Id. § 762.11. The Sixth Circuit Court of Appeals has held that a guilty plea under HYTA constitutes a "prior sentence." United States v. Shor, 549 F.3d 1075, 1076-78 (6th Cir. 2008).

[¶15]   Here, the Defendant entered a guilty plea as required by the Michigan Statute. A diversionary disposition resulting from a finding or admission of guilt, or a plea of nolo contendere, in a judicial proceeding is counted under the Guidelines. Therefore, the one-point increase provided in paragraph 42 of the PSR is proper.

## CONCLUSION

[¶16]   Based upon the factual findings made by the Court as set forth in this Sentencing Memorandum, which facts are supported by a preponderance of the evidence, the Court finds the PSR properly assesses the three-point increase for an aggravating role under U.S.S.G. § 3B1.1 and the one-point increase in paragraph 42 under USSG § 4A1.2(f).

[¶17]   **IT IS SO ORDERED.**

DATED March 7, 2023.

Daniel M. Traynor, District Judge
United States District Court